UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiffs,

v.

JACK V. GIACALONE,

    Defendant.
_____/

Case No. 2:15-cv-11946-GCS-RSW

HON. GEORGE CARAM STEEH

## BRIEF IN PARTIAL OPPOSITION TO USA'S MOTION FOR INSTALLMENT PAYMENTS

In response to the government's Motion for Installment Payments, Defendant states:

## **STATEMENT OF ISSUES PRESENTED**

1. Should this Court enter an order for installment payments on the Consent Judgment entered on January 4, 2016?

2. If so, what should the installment payment be?

## STATEMENT OF FACTS

This is a post-judgment matter, which follows a Consent Judgment entered in January, 2016. The underlying lawsuit was for collection of taxes due from Defendant for the tax years 2004 through 2011. The principal balance of tax owed is approximately $275,000, and with penalty and interest, the debt is now over $450,000.00.

By way of background, in September, 2013, Defendant's wife, Deborah Giacalone, was served with liens and notices concerning certain real property she owned as Trustee of her Trust. The notices involved liens for tax liabilities owed by Defendant, Jack Giacalone. The real property in question is the personal residence in which Deborah, Jack, and their profoundly disabled daughter, Chantel, reside. As a result of these liens and notices, Deborah brought suit against the government, alleging that she was not responsible for tax debts owed by her husband, and therefore, liens and levies which had attached to property owned by her were improper. Discovery was obtained from Deborah and Jack Giacalone with respect to the issues raised in Deborah's complaint. In that lawsuit, and pursuant to agreement of counsel and with the cooperation of Defendant, he produced over 300 pages of documentation as to his and his wife's financial condition, including check registers, deeds, loan documents, trust documents, and the like. Ultimately, Deborah's case was settled, and the terms of the settlement grant the government a

lien on 50% of the equity in the principal residence of Deborah.  There is substantial equity in this home, and the government agreed to allow the parties to reside in the home under specific conditions, and the agreement provides that this may continue for as long as both Deborah and Chantel continue to reside in the home.  There is a mortgage on the home, but there will still be ample proceeds to distribute to the government after the mortgage note is fully satisfied.

As part of the settlement agreement in Deborah's case, Defendant agreed to entry of a Consent Judgment in this case, allowing the government to collect the amount of taxes from Jack.  Jack, who is 69 years of age, does not have an income, as he is well past the normal retirement age.  He spends much of his time giving round-the-clock care to his profoundly disabled daughter.  He drives a 10-year-old vehicle.  He disclosed these things in answers to interrogatories sent to him by the government.

Giacalone has provided answers to the Government's numerous discovery requests concerning his assets, and provided documents where requested to do so, when the documents requested were in his possession.  There is one outstanding discovery request, the government's third postjudgment request, and Defendant has claimed that he does not have documents in his possession which are responsive to these requests.  The government has subpoenaed numerous third-party financial institutions with respect to assets and/or accounts of Giacalone.  Giacalone also

appeared for deposition and was questioned fully about the nature and extent of his assets, and he provided truthful responses to all questions posed to him.

## LEGAL ARGUMENT

Giacalone is not opposing the government's request for monthly payments until the house is sold, although if this was what the government wanted all along, this could have been made an express part of the 2016 Consent Judgment.  It is unclear what has changed so drastically since the entry of the Judgment that is making the government insist on satisfaction more immediately, particularly in light of Giacalone's advanced age and inability to obtain employment.  The value of the home secured by the government's lien is stable and increasing over time, and the mortgage balance is declining, such that the government will recover the entire principal balance owed, plus a large portion of the interest accruing on the debt.

Although the documents presented by the government do not reveal any additional sources from with the government can collect its debt, the government now seeks to have Mr. Giacalone pay $3,500 per month, which is money that Defendant does not have.

Giacalone has characterized himself as a professional gambler, and his only income, other than social security benefits, comes from this activity.  He uses the income to pay household expenses and expenses relating to his disabled daughter. There is nothing about Giacalone's current lifestyle which even remotely suggests

that he has hidden cash resources. The scandalous $300 money orders recited by the government are in nominal amounts and generally only amount to between $1200 and $2500 per month, and Giacalone is borrowing these small amounts of money from friends in order to meet his expenses. The bank statements do not reflect extravagant spending, nor excessive deposit activity. The amount requested by the government ($3,500 per month) is not supported by the documents presented by the government, and this amount would not permit Giacalone to continue to abide by the requirements of the 2015 settlement agreement regarding payments for ordinary household expenses, taxes and insurance.

    Giacalone has never held a traditional job, and at the age of 69, he is not in a position to obtain such employment. There is no possible way for him to maintain payments in the amount suggested by the government. The amount appears to be calculated based on the entire liability, without any consideration for the large amount of money that will be recovered by the government upon the sale of the house. If the Court were to enter an installment payment order in the amount suggested by the government, we would quickly be back before the Court due to a breach of the installment payment order. Giacalone has proposed paying $300 per month in installments until the house is sold, but negotiations with the government over the amount of the monthly installments have stalled because there is still a very

large gap between what the government wants and what Giacalone can realistically pay.

## CONCLUSION

Giacalone is not opposing the request for installment payments, however, the government's demand for an amount that he doesn't have and couldn't possibly pay is not in the interest of justice. The government's ability to collect substantial amounts of the outstanding tax liability is not in the least impaired, because they have a valid lien on the proceeds which will arise from the sale of the real property owned by Deborah's Trust. This effort to extract blood from a stone, and a 69-year-old stone at that, is not in the interest of justice. Any installment payment order should be in an amount that realistically gives Giacalone an opportunity to meet the obligation, in light of his inability to hold a job, his advanced age, and the likelihood that the government will recover most of their debt through the lien on the home.

WHEREFORE, Defendant JACK GIACALONE requests that this Court decline to enter an order for installment payments in the amount demanded by the government, but that alternatively, this Court enter an order that affords Defendant a meaningful opportunity to meet the requirements of the Order.

                                              Respectfully submitted,

                                              SCHWARTZ LAW FIRM, P.C.

                                              By: /s/ Mary A. Mahoney
                                                     Attorney for Defendant
                                                     37887 West Twelve Mile Road, Suite A
                                                   Farmington Hills, Michigan 48331
                                                   (248) 553-9400

Dated: January 31, 2020                 mmahoney@schwartzlawfirmpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2020, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.

                                              /s/Mary A. Mahoney
                                              Schwartz Law Firm, P.C.
                                              Attorneys for Defendant
                                              Farmington Hills, Michigan 48331, Suite A
                                              (248) 553-9400
                                              mmahoney@schwartzlawfirmpc.com